LOUISE GREEN VANOVER

*Plaintiff and Respondent*

vs.

LEE ROY VANOVER

*Defendant and Appellant.*

(No. 2766; February 19th, 1957; 307 Pac. (2d) 117)

56

For the defendant and appellant the cause was submitted upon the brief of Elmer J. Scott and James H. Sperry, both of Worland, Wyoming, and oral argument by Mr. Scott.

For the plaintiff and respondent the cause was submitted upon the brief of Thomas M. McKinney of Basin, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, J. J.

58

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of the Court.

This appeal is from an adverse judgment in a divorce action wherein the respondent was granted a decree of absolute divorce from the appellant and was also awarded a property settlement.

One of the matters relied upon by the appellant to obtain a reversal of the judgment is his contention that the court had not obtained jurisdiction over his person.

There were two summons issued. The first appears upon its face to have been issued on April 23, 1955, received by the sheriff April 28, 1955, made returnable May 2, 1955, served "by Service through Lefty Graham Emploeu (sic) of Defdn (sic)" on May 3, 1955, and filed May 21, 1955, the answer day being shown thereon as May 21, 1955. The second summons appears upon its face to have been issued April 27, 1955, received by the sheriff April 27, 1955, served on defendant personally on April 27, 1955, filed April 28, 1955, made returnable May 2, 1955, and showing the answer day to be May 21, 1955.

The defendant appeared specially and moved the court "to vacate, set aside and quash the alleged or pretended service," and the court sustained the motion and vacated, set aside and quashed the same. Five days after this order was entered, it was vacated by the court's further order and defendant was given until a day certain within which to plead to plaintiff's petition. Thereafter the defendant filed a motion to make definite and certain which was sustained in part, a demurrer which was overruled and finally an answer. In all these pleadings the defendant either expressly reserved his original objection to the court's jurisdiction or affirmatively pleaded the same objection and when adverse rulings were made, the defendant took proper exception. Similarly at the commencement of the trial, the defendant renewed his objection to the court's jurisdiction, and when the same was overruled, he preserved his exception.

Section 3-1006, W.C.S. 1945, provides:

"When the time for bringing parties into court is not fixed by statute, the summons shall be returnable on the second Monday after its date; but when it is issued to any other county, it may be made returnable, at the option of the party having it issued, on the third or fourth Monday after its date; and the day of the month on which it is returnable shall be stated therein."

Under the circumstances in this case, another applicable statute for bringing the defendant into court is § 3-1009, W.C.S. 1945, as follows:

"The service shall be by delivery at any time before the return day, [of] a copy of the summons with the indorsements thereon, together with a copy of the petition to the defendant personally, or by leaving a copy of the summons and petition at his usual place of residence with some member of his family, or other person in his employ over the age of fourteen [14] years, or if the defendant is a partnership, sued by its company name, by leaving a copy of the summons and petition at its usual place of doing business; and the return must be made at the time mentioned in the writ, and the time and manner of service shall be stated on the writ."

Section 3-1501, W.C.S. 1945, fixes the time for defendant's appearance and pleading as follows:

"The answer, demurrer, motion or special appearance by the defendant shall be filed on or before the third Saturday, and the reply, demurrer or motion by the plaintiff on or before the fifth Saturday after the return day of the summons or service by publication and the answer, demurrer or motion of a defendant to a cross petition shall be filed on or before the third Saturday, and the reply, demurrer or motion on or before the fifth Saturday after the cross petition is filed. The filing of a motion or special appearance within the time above specified shall prevent the party filing the same from being in default; provided that when such motion or special appearance is filed and overruled, the party filing the same shall have ten

██ days thereafter to plead over unless otherwise ordered by the court."

The return day of the summons is thus made of special importance as it is from that day the time is computed to determine the day on or before which the defendant is required to act and it also limits the time within which legal service of that process may be made. To permit a plaintiff to transgress these statutes by having the summons specify the return day as the first Monday rather than the second, third or fourth Monday for its return after issuance, as the case may require it, would leave the date of defendant's answer to the whim of a plaintiff and allow plaintiff to flaunt an express law of this state. This may not be done. In consequence the summons issued April 27, 1955, was defective and could not give the court jurisdiction of the person of the defendant even though it was timely served upon the defendant personally, as appears by the return.

With respect to the summons issued April 23, 1955, both the return day and the answer day were correctly set forth. However, the return of this summons shows it was not served until May 3, 1955, one day after the time when legal service of the same might have been made. Additionally the return fails to show this summons was served in any manner authorized by our statutes. The statute here applicable provides that service may be made "* * * by leaving a copy of the summons and petition at his (the defendant's) usual place of residence with some member of his family, or other person in his employ over the age of fourteen (14) years * * *." This wording might have been more explicit, but, if we were to interpret it so as to separate the phrase which requires the summons and petition to be left at the usual place of residence of the defendant, from the phrase "or other person in his em-

ploy," this would give such an enlarged field for making service that it would open wide the door to fraud. We must therefore hold that in order to make valid service of process upon a defendant by serving his employee, such service must be made at the defendant's usual place of residence. This is not shown to have been done in this case. It is also apparent that the writing of the word "Emploeu" as we read this word of questionable legibility, so taxes our ability to decipher its letters, that it leaves considerable doubt whether it was intended to indicate that it was the employee or the employer of the defendant who was served. From what has been said we conclude there was no proper service of the April 23, 1955, summons.

The remaining question to be answered regarding service of process upon the defendant is whether, having appeared for the purpose of quashing service and attacking the court's jurisdiction of the defendant's person, the defendant's subsequent actions or proceedings waived his right to insist upon the defects of process by constituting his appearance to be general.

As above indicated, following the court's vacation of its previous order sustaining appellant's motion to quash the service and the final denial of that motion, the defendant at every step in the proceeding attempted to preserve his objection to the court's jurisdiction. This was done either by expressly stating he was not waiving this objection or by continuing to affirmatively insist upon the same.

In those jurisdictions where special appearances are permitted for the limited purpose of attacking jurisdiction, there is some conflict of authority as to whether further participation in the proceeding waives the special character of the initial appearance and

makes the defendant's appearance general, even though the objection to jurisdiction is preserved and continued to be asserted at every opportunity. See 3 Am.Jur. § 38, p. 807. In 6 C.J.S. § 21, p. 62, after stating that, if there is some act which amounts to a general appearance after a special appearance is made, the jurisdictional objection is waived, it is said:

"Even if defendant awaits the ruling of the court, should it prove to be adverse, he must then, according to the rule in a number of jurisdictions, elect either to stand on his objection or go to the merits, and, if he does the latter, his special appearance and the jurisdictional objection are thereby waived."

In support of this statement decisions from ten states are cited, but in the following paragraph the converse is set forth in these words:

"In many other jurisdictions, however, after a special appearance contesting the jurisdiction has been overruled, defendant may appear generally to the merits without losing the benefit of his special appearance so long as he continues to persist in his protest against personal jurisdiction."

Citations from twenty-three jurisdictions support the latter statement.

Our further research discloses that in addition to the twenty-three jurisdictions from which citations are given in Corpus Juris Secundum, supra, there are three other states, namely, Rhode Island, American Electrical Works v. Devaney, 32 R.I. 292, 79 A. 678; Georgia, McFarland v. McFarland, 151 Ga. 9, 105 S.E. 596, 597, and North Carolina, Mullen v. Norfolk & N. C. Canal Co., 114 N.C. 8, 19 S.E. 106, making a total of twenty-six jurisdictions which have held that where a defendant has first appeared specially for the pur-

pose of objecting to the jurisdiction of the court over his person, his objection is not waived by taking steps to contest the case upon its merits after the objection is overruled. Some of these cases also hold that having once taken exception to an adverse ruling to the attack upon the court's jurisdiction, it is unnecessary in all subsequent steps to preserve the objection as this would serve no useful purpose. See 3 Am.Jur. § 41, p. 810. We have also found that in four states in addition to those cited in Corpus Juris Secundum, it has been held that failure to stand upon the jurisdictional objection waives the special appearance and makes the appearance general. However the force of the holding in four of these fourteen jurisdictions is somewhat impaired because, in one, contrary decisions have been made and in the other three the ruling was somewhat affected by statues or by rule of court.

The reasoning behind most rulings that a waiver follows a failure to stand upon the special appearance and refusal to proceed upon the merits, is that to allow the party to plead after making his objection to jurisdiction and to go to trial on the merits, would allow him to take his chance on the merits and if the result was unfavorable, to give him a second chance by having the adverse judgment nullified should it be ultimately determined that jurisdiction over his person was not obtained because of the defective service of process or the service of defective process. But a somewhat persuasive answer to such an argument is found in Miner v. Francis, 3 N.D. 549, 58 N.W. 343, 344, where the court said:

"If the subsequent general appearance can be regarded as voluntary, the respondent's position cannot be successfully assailed. But we do not think it was voluntary. It was not like an appearance under threat of a justice to take jurisdiction without color of authority. In

such a case, the defendant, being in no danger of prejudice from refusing to appear, could hardly be said to have been forced to make an appearance to protect himself. Such an appearance would be voluntary. But here there was a summons, although it was defective, and here there was a legal service of this summons. The court having overruled defendant's motion, the defendants were compelled by the joint action of the justice and the plaintiff—by the action of the justice in overruling the motion, and the action of the plaintiff in persisting in his suit after he had been apprised of the defect in the summons—to defend, or take the risk of being defeated on the question of jurisdiction after it was too late to be heard on the merits. Some of the courts which hold an appearance under such circumstances to be voluntary deem it unfair that the defendant should have the chance of defeating a judgment on the merits by sustaining the jurisdictional point on appeal, while he enjoys the certainty of sustaining the judgment, if favorable to himself. But it often happens that, upon the trial of an action, reversible error is committed by the court while plaintiff is proving his case. Must the defendant then be regarded as waiving such error because he proceeds, with the chance of reversal if defeated? It is well to put the responsibility for this condition where it belongs. That the defendant enjoys this advantage is owing to the action of the plaintiff, in persisting in his prosecution of the case after he has been fairly warned by the defendant that he will, at all stages of the action, insist upon his contention that the court had no right to take jurisdiction of his person. Let the plaintiff dismiss, and start anew, if he is unwilling that defendant should enjoy this advantage. We are aware that there are a number of cases in which the contrary view is adopted; but we feel that the rule which we establish in this case is more in accord with principle, and more equitable in its spirit, having in view the interests and right of both plaintiff and defendant in the action. We hold that a general appearance after an objection to jurisdiction has been overruled does not constitute a voluntary appearance, unless the contrary is shown, provided the defendant seeks a review

of his objection to the jurisdiction of the court in the very action in which it is made."

We also are aware that in a considerable number of cases where special appearances are made to question jurisdiction because of alleged deficiencies in process, the reviewing court finds itself in agreement with the lower court's ruling. Where this is true, to require a defendant to stand upon his objection would result in one of two things. If the plaintiff be given a judgment upon the merits during pendency of defendant's appeal from the adverse ruling, it would in fact be obtained upon what amounts to an ex parte trial, with the defendant helpless to complain of any other errors which occurred, no matter how grievous they were. If the proceeding is stayed until determination of dedendant's appeal from the adverse ruling, plaintiff will have been unnecessarily delayed in receiving a trial of his cause with an appeal upon the merits still to be had if that were considered necessary by either party, to secure a just and final disposition of the law suit. On the other hand, if the action is permitted to proceed to trial, saving to the defendant his objection to jurisdiction and permitting him to contest upon the merits, no such delay occurs and a single appeal may dispose of all alleged errors.

Therefore, we not only believe that it would be an injustice to a defendant who has not in fact been brought before the court by proper process to require him to abandon the assertion of that right in order to defend himself upon the merits, but we think it will improve the administration of justice to hold as we now do, that where the defendant has properly made special appearance for the sole purpose of objecting to the jurisdiction of the court over his person because of defective process or improper service of process, and the court has ruled adversely upon his objection, such

a defendant does not waive his rights under such special appearance by persisting in defense of the action against him upon the merits, at least, where, as in this case the defendant continued at every step in the proceeding to either expressly reserve or to affirmatively reassert the objection. In consequence we must hold that the court erred in failing to sustain the defendant's motion to quash the service.

It might be well to notice another point raised by appellant. The defendant called one of the opposing counsel for cross examination under the statute. When this counsel claimed privilege, the defendant stated to the court that the object of the examination would concern matters affecting the court's jurisdiction and not any confidential communication between attorney and client. After some discussion the defendant started to make an offer of proof which included the reading of an instrument, when he was interrupted by plaintiff's attorney who objected to the reading of the instrument unless the relevancy of the offer was shown. The defendant repeated he wanted to make an offer of proof and even stated he would be glad to make the offer in chambers, but the court sustained the objection. This results in the record not showing just what the defendant was offering to prove. Defendant's counsel did however state he renewed defendant's objection to the jurisdiction of the court.

It is not only the absolute right and privilege of a party to make an offer of proof when an objection to his interrogation of a witness is sustained, but it is also the right of this court to have the record set forth the statement of what the offered proof will consist and which the party is contending should properly be received. See 88 C.J.S. § 73, p. 179; 53 Am.Jur. § 99, p. 88, and authorities thereunder. This is in order

that we may determine whether the court ruled correctly in excluding the evidence. It may be that there could be such an abuse of this right to make offer of proof as would justify a court in placing a reasonable limitation upon its exercise, but in the instant case it does not sufficiently appear that counsel had gone so far as to make such an abuse evident.

The judgment of the lower court is reversed.

Reversed.